ALEXANDER C. TODD *vs.* BOARD OF APPEALS OF YARMOUTH & others.

Barnstable. December 3, 1957. — March 7, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Zoning.*

Authority given by a zoning board of appeals to use premises in a residence district "for boat rentals, sales and service of boats, motors and of boating and fishing equipment and storage of boats" was for uses substantially different in character from uses of premises permitted in residence districts by the zoning by-law for "the handling of fish on the same premises where brought in from the sea, including sale," "accessory" uses "customarily incident" to permitted uses, and, on approval of the board of appeals, "boat building and storage"; and

was for uses substantially different in character from the uses carried on upon the premises when the by-law became effective of landing of boats, taking and sale of shellfish, and renting of boats on occasions. [166–167]

In a suit in equity in the Superior Court by way of an appeal from a decision of a zoning board of appeals purporting to grant a "variance" authorizing use of premises in a residence district for business purposes in connection with boats, findings by the trial judge showed no error in his conclusion that the prerequisites to the granting of a variance stated in G. L. c. 40A, § 15, cl. 3, inserted by St. 1954, c. 368, § 2, which must be satisfied despite less strict prerequisites for a "variance" specified in the zoning by-law, had not been met. [167–168]

A decision by a zoning board of appeals authorizing the owner of premises in a residence district to use them for a certain business purpose, reciting that he had requested a "permit," that the extension of an "existing permit" for a similar use would not be detrimental to the neighborhood, and that "the granting of this permit" did not contemplate "expansion beyond the owner's existing buildings and bounds," was a grant of a special permit within G. L. c. 40A, § 4 and § 15, cl. 2, inserted by St. 1954, c. 368, § 2, and not of a variance, notwithstanding statements in the decision that the board thereby authorized a "variance" and that "the variance" should run only to the applicant. [168]

A decision by a zoning board of appeals granting to the owner of premises in a residence district a permit to use them for a certain business and providing that the permit "runs only to the applicant" was a personal grant to the applicant owner for the term of his occupancy, and was not available to any succeeding occupant whether or not such limitation in the decision was valid. [169]

An application to a zoning board of appeals for a permit to use premises "for boat rentals, sales and service of boats, motors and of boating and fishing equipment and storage of boats" was for a use different from that allowed by a previously granted permit alleged to authorize similar activities but subject to the limitation that "only the maintenance of the owner's boats shall be permitted." [169–170]

BILL IN EQUITY, filed in the Superior Court on February 14, 1956.

The suit was heard by *Beaudreau*, J.

*Daniel J. Fern*, for the defendants.

*Kenneth E. Wilson*, for the plaintiff.

WHITTEMORE, J. This is an appeal from a decree of the Superior Court which annulled a decision of the board of appeals of the town of Yarmouth permitting certain uses of land zoned for residential use under the zoning by-law first adopted in 1946. The appellants are the board of appeals and the intervener, one Maki. The plaintiff, as the

judge found, owns adjoining residential land. Maki, according to the decision of the board, requested a "permit" to use property owned by one Platani at Highland and Bellevue avenues, South Yarmouth, "for boat rentals, sales and service of boats, motors and of boating and fishing equipment and storage of boats." After the issue was joined in the Superior Court, an interlocutory decree referred the matter back to the board "for a rehearing and determination of the reasons for the action taken . . . ." The resulting decision of May 17, 1956, provides that "we authorize a variance to allow the property to be used for . . . [the uses sought]," for the reasons that: "The board finds that the premises have been used at least for five years before zoning went into effect, to wit: previous to March, 1946, . . . for landing of boats, processing of shellfish and at times for the renting of small boats. Since zoning has gone into effect, Mr. Anthony Platani was granted a variance from which no appeal was taken, to conduct a similar business upon the premises, to wit: renting boats and fishing equipment and storage of boats. The board finds that there was practically a nonconforming use of the premises previous to the time of zoning, and finds that the use requested now by the present applicant, Eino Maki, is not substantially different in character to the one previously used, and that the proposed use by this applicant of the premises would not be detrimental or objectionable to the neighborhood."

There were, as the judge found, two prior grants to Platani by way of permit or variance. The defendants rely on these prior decisions and in particular on the second from which no appeal was taken, and which in October, 1955, purported to grant the right to Platani to exercise the precise uses for which Maki later applied. The October, 1955, decision, however, recited "(1) that the granting of this permit does not contemplate expansion beyond the owner's existing buildings and bounds, (2) only the maintenance of the owner's boats shall be permitted [and] (3) . . . the variance runs only to the applicant." It also recited that "The

business requested has existed on this property for a number of years. The board feels that the extension of existing permit is not detrimental to the neighborhood and that the natural growth of business warrants such extension." The "existing permit" referred to by the board had been issued to Platani in March, 1954, and purported to authorize "a variance . . . for a boat rental service," which "runs only to the applicant and does not run with the property."

The trial judge took a view and made findings of fact. The findings included in substance these facts: Platani acquired the property in 1954 and used it to 1956. The property has a pier extending into the river for landing and tying boats. One Fuller, owner from 1938 to 1948, built a boat house to store his boat in the wintertime. In 1941 he obtained a license to navigate a motor boat carrying passengers for hire, and in 1941 and 1942 he did so but not on regular schedule. He made "about fifteen trips to the islands from 1941 to 1942" but the "excursions to the islands were terminated in 1942 . . . ." He had three other boats and "another man who lived near by had three more, which were rented on occasions." Later Fuller remodeled the boat house into a small cottage. He also "fished for shellfish, dug clams, and so forth, which he sold on his property."

One Eldridge owned the premises from 1948 to 1954. "He also used a few boats for shellfishing, and he sold this fish on his premises to neighbors and others who wished to purchase them." He did not advertise by signs or other means. During Platani's occupation "more boats were used and rented, more motor vehicles entered the premises, and more boats approached the pier." "From the view . . . I got the impression that . . . Fuller and Eldridge . . . did what any owner of property located on the water front might be apt to do, with a few boats, enjoying fishing, digging clams, and so forth, and selling or distributing these shellfish to neighbors, but I did not get the impression, from the evidence or the view, that this was an established business as compared with the activities of the business now

being conducted by Maki." The concluding findings are that the uses prior to adoption of the zoning by-law were not for "any business purposes not in conformity with the zoning by-laws," that "the variance" granted to Maki would permit use for a purpose entirely different in character from the pre-zoning uses and different in character "from any use provided by any special exception" of the by-law, and that each of the statutory requirements of a variance did not exist.

The zoning by-law provides: "Section II. . . . In a residence district no building or premises shall be . . . used for any purpose except: . . . 6. The handling of fish on the same premises where brought in from the sea, including sale; 7. Accessory use . . . customarily incident to any of the above permitted uses and not detrimental to a residential neighborhood. The term 'accessory use' in this section shall not include: . . . [provisions not relevant]. 8. Any of the following uses, on approval of the Board of Appeals; . . . (i) Boat building and storage. . . . Section V. Nonconforming uses 1. . . . Any lawful . . . use . . . at the time this by-law or any amendment thereto is adopted may be continued . . . provided such use has not been discontinued for a period of three years. 2. . . . The Board of Appeals may permit any non-conforming use to be changed to any specified use not substantially different in character or more detrimental or objectionable to a neighborhood. . . . Section VII. . . . 2. . . . [provision for application for permits]. The Board of Appeals may authorize . . . a variance from the terms of these by-laws with respect to a particular parcel of land where, owing to conditions peculiar to such parcel, a literal enforcement . . . would involve substantial practical difficulty and hardship. . . . [D]ue consideration shall be given to promoting the public good, and no variance shall be granted which will have a detrimental effect upon the neighborhood. . . ."

It is manifest that the authority given Platani which Maki seeks to have continued was for uses more extensive than those permitted in a residence district, expressly, or as

accessory uses, and more extensive than the nonconforming uses if any which existed at the time of the adoption of the zoning by-law in 1946. It is not entirely clear on the findings what business use was being made of the premises in 1946, but we think it is apparent in any event that there was then, and in the pre-zoning period, no business on the premises of the "sales and service of boats, motors and of boating and fishing equipment." This language as to service imports more than the service of the occupant's own boats and equipment. The selling business which is described is extensive and involves much more than the sale of boats built on the premises which the defendants argue is a right implied in the provision for "boat building" subject to approval of the board. It is also plain that the use of the premises for "boat rentals, sales and service of boats, motors and of boating and fishing equipment" is a use beyond that which can be authorized by a permit under section II 8 (i) of the by-law.

The board appears to have intended to take action on the Maki application under the provision for change in nonconforming use, but the judge's findings establish that the new use is substantially different in character from the pre-zoning use, and the subsidiary facts found support this conclusion.

If the board's action is to be judged as the grant of a variance, the statutory requirements must of course be satisfied (G. L. [Ter. Ed.] c. 40A, § 15, cl. 3,[1] inserted by St. 1954, c. 368, § 2), notwithstanding the more general and less strict

---

[1] "To authorize upon appeal, or upon petition in cases where a particular use is sought for which no permit is required, with respect to a particular parcel of land or to an existing building thereon a variance from the terms of the applicable zoning ordinance or by-law where, owing to conditions especially affecting such parcel or such building but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law but not otherwise. In exercising the powers under paragraph three above, the board may impose limitations both of time and of user, and a continuation of the use permitted may be conditioned upon compliance with regulations to be made and amended from time to time thereafter."

specifications of the by-law. See *Leahy* v. *Inspector of Buildings of New Bedford,* 308 Mass. 128, 131. There is no basis in the findings for suggesting error in the judge's conclusion that these requirements have not been met.

The defendants rely upon the contentions that the restriction in the decision of October, 1955, "that the variance runs only to the applicant" is invalid, and that that unappealed decision is res judicata of the issues necessarily resolved by it.

We think the action of the board in October, 1955, was the grant of a permit and not a variance. It recites that the petitioner "requested permit," that "the extension of existing permit is not detrimental . . . and . . . that the granting of this permit does not contemplate expansion beyond the owner's existing buildings and bounds." The significance of this language is weakened by the statements that "we authorize a variance" and "the variance runs only to the applicant." There is, however, no finding that the statutory requirements for the grant of a variance have been met, so that the action would be patently invalid as an exercise of the variance power, and there is no indication, except in the ambiguous use of the word "variance," that the board was intentionally or carelessly disregardful of the statute. See *Spaulding* v. *Board of Appeals of Leicester,* 334 Mass. 688, 692. There are no such specific statutory conditions for the granting of a permit for an exception under G. L. (Ter. Ed.) c. 40A, §§ 4 and 15, cl. 2.[1]

[1] "Section 4. A zoning ordinance or by-law may provide that exceptions may be allowed to the regulations and restrictions contained therein, which shall be applicable to all of the districts of a particular class and of a character set forth in such ordinance or by-law. Such exceptions shall be in harmony with the general purpose and intent of the ordinance or by-law and may be subject to general or specific rules therein contained. The board of appeals established under section fourteen of such city or town, or the city council of such city or the selectmen of such town, as such ordinance or by-law may provide, may, in appropriate cases and subject to appropriate conditions and safeguards, grant to an applicant a special permit to make use of his land or to erect and maintain buildings or other structures thereon in accordance with such an exception. Before granting such a special permit the board of appeals, or the city council or the selectmen if the ordinance or by-law so provides, shall hold a public hearing thereon, notice of which shall be given in accordance with section seventeen." Section 15, cl. 2: "2. To hear and decide applications for special permits for exceptions as provided in section four upon which such board is required to pass."

The power to give permits for exceptions is so worded as to suggest that personal use may be contemplated ("grant to an applicant a special permit to make use of his land . . . in accordance with such an exception"). It is contended that the limitation that "the variance runs only to the applicant" was invalid because primarily related to ownership of property, rather than its use. The contention may have more force in respect of a variance under § 15, cl. 3, than of a permit under § 15, cl. 2. See *Olevson* v. *Zoning Board of Review of Narragansett,* 71 R. I. 303; *Soho Park & Land Co.* v. *Board of Adjustment of Belleville,* 6 Misc. (N. J.) 686. We do not reach that issue. If there is anything to the point as applied to a permit, and we need not decide this, we think the defect would extend to the entire action of the board. *Olevson* v. *Zoning Board of Review of Narragansett, supra.* We hold that the October, 1955, decision stands for no more than it purports to be, a personal grant of permit to Platani for the term of his occupancy; and whether or not the limitation that "the variance runs only to the applicant" was valid, there is no existing grant which is available to Maki or any other occupant succeeding Platani.

The cases holding void an invalid condition imposed in terms on the grant of a license are manifestly distinguishable. See *New England Telephone & Telegraph Co.* v. *Brockton,* 332 Mass. 662; *Keefe* v. *Lexington & Boston Street Railway,* 185 Mass. 183; *Selectmen of Clinton* v. *Worcester Consolidated Street Railway,* 199 Mass. 279, 285; *Treasurer & Receiver General* v. *Revere Sugar Refinery,* 247 Mass. 483, 491.

Plainly, the only relevant issue underlying and necessarily determined by the October, 1955, decision is that the use of the premises by Platani would not be detrimental. That is not the present issue.

There is an additional reason why the Platani permit could not support the use now sought. Restriction (2) of the grant to Platani, providing that "only the maintenance of the owner's boats shall be permitted," is not a limitation of the grant to the period of Platani's use. Platani, in restric-

tion (3), is referred to as "applicant." Restriction (2) limits all aspects in which service might be rendered to service of the boats of whomever is the owner of the premises. This means that, in any event, the Maki application would be for a new and different use.

> *Final decree affirmed with costs*
> *of the appeal to the plaintiff*
> *against the intervener.*