EINO A. MAKI & others[1] *vs.* TOWN OF YARMOUTH & others.[2]

Barnstable.    December 9, 1959. — January 5, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Zoning.  Yarmouth.  Permit.*

Under a zoning by-law providing that "In a business district the rear boundary line shall be the existing rear boundary lot line . . . not to exceed however 1,200 feet in depth," and a zoning map stating "Red lines denote business zones, . . . depth of business . . . zones will be the rear property lines of lots or to a point in the lot not more than 1,200 feet from the street line" and showing the street frontages of business zones by red lines along the street lines, the side lines of business zones by red lines drawn perpendicular to the street lines and representing the direction of the side lines, and red arrows pointing to the perpendicular lines to further indicate the limits of the zones, a lot which, if it was within the red lines perpendicular to a street indicating the side lines of such a business zone, had no frontage on the street was not in the business zone but was in an adjacent residence zone. [212]

---

[1] The other plaintiffs are Barbara A. Maki, coöwner of the locus from 1956 to July, 1958, and Anthony J. Platani, the record owner of the locus at the time of trial.

[2] The other defendants are the acting building inspector and the selectmen of Yarmouth.

A decision by a zoning board of appeals granting to the owner of premises in a residence district a permit to use them for a certain business and providing that the permit "runs only to the applicant" was a personal grant to the applicant owner so that the permit expired upon his conveyance of the premises and was not available to him upon a reconveyance of the premises to him by his grantee.  [213]

BILL IN EQUITY, filed in the Superior Court on July 29, 1958.

The suit was heard by *Smith,* J., on a master's report.

*Charles W. Proctor,* for the plaintiffs.

*A. Harold Castonguay,* for the defendants, submitted a brief.

CUTTER, J.  The plaintiffs seek declaratory relief to determine whether land, owned by Platani prior to May 15, 1956, and after July 2, 1958, and by the Makis from May 15, 1956, to July 2, 1958, when it was reconveyed to Platani, is within an area zoned for business purposes under the zoning by-law of Yarmouth.  The case was referred to a master.  His report was confirmed.  A final decree declared (1) that the premises were in a residence zone; (2) that certain permits granted to Platani in 1954 and 1955, before his conveyance to the Makis, no longer exist; (3) that the 1956 "conveyance from Platani to Maki"[3] was not in good faith; and (4) that the plaintiffs are "in violation of the zoning by-laws."  The plaintiffs have appealed.  The principal question discussed by them is whether the land was in a residence district.  A very brief argument is made that Platani's permits of 1954 and 1955 now apply to the premises. The land is that considered in *Todd* v. *Board of Appeals of Yarmouth,* 337 Mass. 162.  The facts, relevant to each of the issues argued, are stated as found by the master in connection with the discussion of the respective issues.

1. The locus is on the west side of Bass River with a sixty-nine foot frontage on the river and a depth of about two hundred sixty feet, bounded on the south by a right of

---

[3] The decree so reads.  In view of the language of the bill referred to in this paragraph of the decree and statements in the master's report mentioned later in this opinion, it may be that the decree should refer to the 1958 conveyance from the Makis to Platani.

way and on the west by another right of way which "leads
to still another right of way . . . which in turn leads to
. . . Highland Avenue." The locus is some distance north
of a State highway, Route 28, but has no frontage on Route
28, nor, so far as appears from the record, upon any other
street.

Yarmouth's zoning by-law divides the town, as shown on
the zoning map dated December 28, 1945, into residence,
business, and industrial districts, and provides in § 1 (2),
"In a business district the rear boundary line shall be the
existing rear boundary lot line as of date of acceptance of
this ordinance, not to exceed however 1,200 feet in depth."
The map, appended to the master's report, shows that most
of the town is in a residence zone. There are, however, a
few small business zones along both sides of Main Street[4]
in the northern part of the town, and along both sides of
Route 28 in the southern part of the town. There are also
four isolated small business zones not leading off either
Main Street or Route 28. The whole limits of two of these
isolated business zones are indicated on the zoning map.
As to the other two isolated business zones, the limits are
indicated by their frontage on a public way or ways and by
what appear to be property boundary lines at each end of
that frontage. These lines lead back toward the rear of the
lots thus zoned. We have no concern with the two small
industrial areas.

"The zoning map . . . contains the following 'Notes' —
'Red lines denote business zones, green lines denote indus-
trial zones, balance residence zone, depth of business and
industrial zones will be the rear property lines of lots or to
a point in the lot not more than 1,200 feet from the street
line.' . . . It [the map] shows a number of business zones.
These areas are shown by a red line along the street line, the
limits of the areas being shown by a red line drawn at right
angles to the street line. Red arrows pointing to these per-

---

[4] There also appears to be a Main Street in the southern part of the town,
not far from the locus.

pendicular lines are employed to further indicate the limits of the 'business zone.' One of these business zones is an area on the north side of the highway known as Route No. 28, the easterly limit of which is the Bass River. This easterly limit is shown by a red line running from the north side of Route No. 28 along the westerly shore of Bass River to a point beyond the locus. The locus has no frontage on Route No. 28."

The master found (a) "that the red line drawn on the zoning map from the north side of Route No. 28 along the westerly shore of Bass River is not a boundary of the business zone and frontage on this line does not indicate that property is in a 'business zone,'" and also (b) "that this line defines the easterly limit or extent of the area fronting on Route No. 28 which can be used for business purposes. Since the locus has no frontage on Route No. 28 I find that it is not in a 'business zone.'"

The zoning map would have been far more satisfactory if it had been on a larger scale and if it had outlined all the boundaries of each of the several zones. We conclude, nevertheless, that the intention of the draftsman, adopted by the town in the by-law, with respect to the locus can be sufficiently ascertained, and that what has been done on the map is consistent with § 1 (2) of the zoning by-law already quoted, that the zone's "rear boundary line shall be the existing rear boundary lot line . . . not to exceed . . . 1,200 feet in depth."

In the area around the locus, it is clear that the draftsman intended to show as business zone frontage all the area bordering on the north side of Route 28 between Bass River and the line parallel to and slightly east of Pond Street. See accompanying chart prepared by enlargement and simplification of the pertinent section of the zoning map, with red lines appearing on the zoning map indicated by a thin hatched area[5] (so as to be susceptible of reproduction in

---

[5] On the original zoning map the red lines are thinner than the hatched areas used to indicate them on the chart accompanying this opinion.

black and white). On the southerly side of Route 28, the extent of the business zone frontage appears to be the same, except for a narrow strip just west of Bass River. The map contains other indication that the line substantially parallel to Pond Street and the line along Bass River on the northerly side of Route 28 (and the similar line on the southerly side near but not immediately at Bass River) are intended merely to represent the direction of the side lines of the business zone, for the draftsman has superimposed upon the area the words "Business Zone" with thin red line arrows running to these boundaries. These arrows are so drawn as to lead us to conclude, as did the master, that these side red lines are nothing more than the easterly and westerly boundaries of the business zone frontage. There is no street shown on the zoning map along the shore of Bass River, so the red line along the shore could not in any event represent street frontage of the zone.

Since the locus has no frontage on Route 28, it must be cut off from the business zone on Route 28 by the rear lot line of at least one parcel having such frontage. The master's findings, already quoted, indicate that the locus has no westerly frontage on any street, but only on a "right of way." The first red line west of the red line along Bass River appears to be along a street. Even if this red line is intended to represent street frontage of a business zone, a matter which we need not decide, it appears from the finding just mentioned that the locus is separated from that red line by the "right of way" constituting, as it must, the rear lot line of another parcel. Accordingly, the record contains no indication that the master erred in finding that the locus was in a residence zone.

2. The plaintiffs contend that permits to make uses of the property, inconsistent with the zoning by-law, granted to Platani in 1954 and 1955 are still in effect. Platani acquired the locus in 1953. In 1954 the board of appeals authorized "a variance to allow [Platani] the use of his property off Belleview Avenue and on Bass River for a boat rental service . . . . This variance runs only to the appli-

cant and does not run with the property . . . ." A similar "variance," running "only to the applicant" Platani, was granted in October, 1955. Platani conveyed the property to the Makis on May 15, 1956, by a conveyance, the revenue stamps on which indicated a consideration of $15,000. The board of appeals on May 17 granted to the Makis "a permit allowing the property to be used for the same purposes allowed in" Platani's second application. This action of the board was annulled following our decision in *Todd* v. *Board of Appeals of Yarmouth*, 337 Mass. 162, in which (at p. 169) we held that the permit of October, 1955, was "no more than it purports to be, a personal grant of permit to Platani for the term of his occupancy" and that there was "no existing grant . . . to Maki or any other occupant succeeding Platani." The Makis, on July 2, 1958, after the *Todd* decision (announced March 7, 1958), reconveyed to Platani by a deed for which the revenue stamps indicated a consideration of $1,000 or less. This deed was subject to the right of the Makis to demand a new conveyance from Platani for the same consideration paid by him. The master found this reconveyance to Platani not to have been made in good faith (see footnote 3, *supra*) and that the Makis are the real owners of the property and not employees or agents of Platani in conducting business activities on the property.

The master, citing the *Todd* decision, construed the permits given to Platani to be personal to him and concluded that they "terminated by their own limitations" when the 1956 conveyance to the Makis took place. He also concluded that the Makis' reconveyance of the property to Platani "could not operate to renew a . . . permit which had already expired." The master correctly decided that the permits granted to Platani in 1954 and 1955 were no longer in force. The principles stated in the *Todd* case, even if not binding on the plaintiffs as a matter of res judicata, have been correctly applied.

3. The final decree is affirmed, subject, however, to correction, if this shall be found to be proper in the Superior Court, of any erroneous reference to the 1956, rather than

the 1958, conveyance in par. 3 of the final decree (see foot-note 3, *supra*).   The defendants are to have costs of this appeal.

*So ordered.*