THE CITY OF GALENA, Plaintiff-Appellant, v. PATRICK DUNN, Defendant-Appellee.

Second District   No. 2—91—0079

Opinion filed December 5, 1991.

Philip F. Jensen and Dennis M. Walters, both of Hammer, Simon & Jensen, of Galena, for appellant.

Swanson & Rominski, of Waukegan, and Ronald P. Paja, of Stockton (Barbara Swanson Rominski, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Patrick Dunn, and his wife owned a 100-acre dairy farm in rural unincorporated Jo Daviess County upon which they decided to build their personal residence. Mrs. Dunn went to the county office on June 28, 1990, and got a county building permit. They also received a septic permit from the county health department. They commenced construction of their home. The county inspected the construction and gave the Dunns a certificate of compliance.

The City of Galena (City), the nearest municipality to the Dunn property, sent its zoning enforcement officer to the Dunn farm with a notice to stop work. The defendant continued construction.

The City brought suit against Patrick Dunn, asking that the court enjoin him from further construction of his building, and to impose fines for violation of the zoning ordinance of the City for Dunn's failure to obtain a building permit from the City. Defendant moved to dismiss the complaint. The court held a hearing on that motion and, thereafter, entered its order which found that "the City of Galena does not have authority to enforce their building code violations within one and one half miles from their territorial limits." The order granted defendant's motion to dismiss.

The City asked for rehearing in the trial court or, in the alternative, permission to file an amended complaint. The trial court granted the City leave to file its amended complaint.

The amended complaint alleged that defendant violated the City's zoning ordinance by not obtaining a building permit and asked the court to assess a fine for that violation. Count II of the amended complaint requested the court to issue an injunction to prevent the defendant from continued construction. The affidavit of the City's building official was attached to the complaint. That official stated that defendant continued to build on his property and that defendant

had been notified of the need for a building permit, an electrical permit, and for a heating permit. The building official stated that construction had continued and the stop work notice had been ignored by the defendant.

A bench trial was held on the City's amended complaint. The City's sole witness at that trial was Dan Weeks, the City's building inspector and deputy zoning administrator. Weeks testified that he was familiar with section 11—13—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1), which enabled municipalities to fix standards to which buildings or structures shall conform. A major part of Weeks' job is to ensure that such conformity occurs.

Weeks testified that to assure compliance with the fixed standards for buildings and structures, the City required that an application for a permit be submitted with an accompanying site survey or plan, showing lot location and back and side setbacks, and a blueprint or schematic drawing, showing the building layout such as size of rooms, stairway locations, foundation and footing design, roof design, and electrical openings. Without this permit process, Weeks stated, the City could not be assured that a structure complied with the fixed standards, and risks to the health, safety, and welfare of the community could occur. Weeks said that by requiring that construction plans be preapproved before a permit is issued, such risks could be avoided. Weeks stated that after issuance of a permit, various inspections occur throughout the construction of a structure to ensure that the construction is being done according to the approved plan. After the construction is completed, a final inspection occurs, and an occupancy permit is issued.

Weeks recalled that he first learned of the construction on defendant's property, which is located within 1½ miles of the City limits, when Sproule Construction (Sproule), the construction company putting in the foundation for defendant's house, sought a building permit for that purpose. At the time Sproule requested the permit, it submitted a copy of a blueprint and a little picture of defendant's house and indicated to Weeks that defendant intended to submit to the City the necessary plans for the residence. Based on Sproule's assurance that defendant's plans were forthcoming, Weeks issued the permit for the foundation and subsequently inspected the footings for the foundation and the steel placement and construction standards for the foundation before it was poured.

Subsequently, Weeks drove by the site of the foundation and discovered that construction on the rest of the residence had started. No permit had been issued for the construction. Weeks wrote a letter on

June 26, 1990, which was entered into evidence, informing defendant that construction must stop until Weeks received and had an opportunity to review defendant's blueprint for the structure and any revisions to the plan. Weeks related that defendant never responded to his letter.

Six days later Weeks returned to defendant's property. Posted at the entryway to defendant's driveway was a "No trespassing" sign which Weeks did not recall seeing earlier. From his vantage point, Weeks observed that construction was still occurring. On July 9 Weeks again returned to defendant's property and noticed that further construction had occurred. Having received no plan from defendant to review and having made no inspection of defendant's structure during construction, Weeks stated that he did not know if defendant's structure complied with the City's building standards.

Weeks stated that he was familiar with the City's zoning ordinance and that section 15 pertains to permits. The applicable section, 15.2.1 provides:

"15.2.1 Building Permit.

15.2.1.1 Building Permit Required. No building or structure shall hereafter be erected or structurally altered until a building permit shall be issued by the City stating that the building or structure and use of land comply with the regulations of this Ordinance and all building and health laws and ordinances of the City." (City of Galena, Ill., Zoning Ordinance 0—75—1, §15.2.1 (1990).)

Weeks said that defendant had not complied with this requirement.

Weeks testified that he was familiar with the action brought by the City against defendant and with the two remedies sought, the assessment of a fine according to the City's zoning ordinance and the issuance of an injunction. According to Weeks, all the City was really seeking was compliance with the zoning ordinance, *i.e.*, that defendant file the requisite application for a building permit and pay the applicable fee.

Weeks testified that he was familiar with the location of defendant's property but did not know the size of the property. According to Weeks, defendant's land was primarily used for agricultural purposes, and construction of a residence on property zoned for agricultural use was permitted. Weeks stated that from the observations he made from some distance away from the structure he could tell that the structure was going to be 1½ stories in height but that he had no idea whether the structure complied with the City's standard for height. Weeks agreed that although he had not specifically inspected

defendant's structure, it was possible that it complied with height and setback standards.

Defendant's sole witness was Joyce Dunn, defendant's wife. Dunn testified that a residence had been constructed on the property owned by her husband and her and that she had obtained a permit for the construction from the county. Dunn identified a building permit issued by the county on June 28, 1990. Dunn related that she had to pay double the permit fee because construction had been started on the residence prior to her application for the permit. Dunn recalled that to obtain a permit she was not required to submit a plat or a survey of the property. Rather, she needed only to submit a copy of the house plan.

According to Dunn, Stan Davis (a county building inspector) came out to her property and inspected the footings and the insulation and wrote out a certificate of compliance which was certified by the county clerk. It was Dunn's understanding that the certificate indicated the construction complied with county ordinances. Dunn related that she and defendant had hired reputable contractors and that she was very satisfied with the work that was done.

Subsequently, the court issued its opinion and order, finding that at the time of the filing of the City's complaint, defendant was required to comply with the City's building code. The court fined defendant in the amount of $50 plus costs. Additionally, the court found that as of October 9, 1990, when the county amended its ordinance pertaining to residential building units, those individuals living in an unincorporated area of the county which fell within 1½ miles of the City's jurisdictional limits need only comply with the building code set forth by the county. The trial court's order, in pertinent part, is as follows:

"2. The Jo Daviess County Building Code in effect as of the date of the filing of the City's complaint, that is, July 18, 1990, contained the following provision as set forth in Section 11—3 of Chapter 11 entitled Residential Building Units: 'No person, firm or corporation shall erect, convert to or construct any residential building unit in the unincorporated areas of Jo Daviess County without first obtaining a separate permit therefor, as defined in this ordinance for each such residential building unit, excepting, however, should any such residential building unit be erected or constructed in an unincorporated area of Jo Daviess County which falls within the jurisdictional limits set out under the duly enacted zoning laws of any incorporated municipality located within Jo Daviess County, the permit requirement for

said municipality shall control, and if said municipality shall require a building permit for the erection or construction of any residential building unit pursuant to the said zoning laws of the municipality, then no permit hereunder shall be required to be obtained from Jo Daviess County.'

3. That this case involves primarily a building code question even though there is zoning language used and the Court finds that the County of Jo Daviess by passing Section 11–3 as amended in 1985 effectively surrendered to the City of Galena all building code powers which it had possessed with reference to that territory within the one and a half mile limit.

4. Consequently, the County of Jo Daviess had no authority to require Defendant Dunn to comply with its building permit regulations as of the date of the institution of this suit.

5. And, the Court finds that the City of Galena had the power at the time of the filing of the complaint to require that the Defendant Dunn comply with the building codes of the City of Galena, and therefore, the Court finds that Defendant Dunn guilty. The Court assesses the fine in this cause in the amount of $50.00 plus costs.

6. With reference to the City of Galena's request for injunctive relief the Court finds as follows:

a. That on October 9, 1990, the Jo Daviess County Board amended the aforesaid Section 11–3 by striking the following language: 'Excepting, however, should any such residential building unit be erected or constructed in an unincorporated area of Jo Daviess County which falls within the jurisdictional limits set out under the duly enacted zoning laws of any incorporated municipality located within Jo Daviess County, the permit requirement for said municipality shall control, and if the said municipality shall require a permit for erection or construction of any residential building unit pursuant to said zoning law of the municipality then no permit hereunder shall be required to be obtained from Jo Daviess County.'

b. By striking the above paragraph of Section 11–3 as aforesaid the County of Jo Daviess then reacquired its sovereign power over the one and half mile limit insofar as it pertains to building permit powers.

c. The Court recognizes that the County of Jo Daviess still has no zoning powers and therefore all zoning ordinances of the city of Galena would be in effect.

d. That the ordinances referred to here are primarily building ordinances. Mr. Weaks [sic] referred to himself as being primarily involved in building inspection.

e. The Court feels that the Illinois State statutes would not and do not pass building permit powers to the City where the County has asserted primarily [sic] control, the reason for this being that if the Court would follow the City's argument we would have the problem of three different categories of inhabitants of Jo Daviess County. One, those that are within a municipality; two, those that live outside a municipality but within one and a half miles of the City limits; and three, those people who live in the rural areas. Those who would live within the City of Galena would have one building code that they would have to follow. Those who live in the County of Jo Daviess outside the one and a half mile limit would have one building code they would have to follow. And those who lived within the one and a half mile limit would then have to comply with two building codes. The court finds that this is oppressive. Therefore, the Court finds that as of October 9, 1990, the citizens residing in the one and a half mile limitation need only follow the building code as set forth by the County of Jo Daviess.

THEREFORE, the Court denies the City of Galena's motion for injunctive relief."

This appeal followed.

The single issue presented is whether the City of Galena's zoning ordinances can require building permits prior to construction within contiguous territory not more than 1½ miles beyond the corporate limits and not included within a municipality.

The City of Galena, acting pursuant to provisions of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1), has enacted a comprehensive zoning ordinance. Section 4.5 of that ordinance states:

"The powers, limits, and duties established by this Ordinance may be exercised within the corporate limits of the City of Galena and within contiguous unincorporated territory not more than one and one-half (1½) miles beyond the corporate limits of the City of Galena and in accordance with applicable State statutes." City of Galena, Ill., Zoning Ordinance O—75—1, §4.5 (1990).

The City points out that since the county of Jo Daviess does not have a county-wide zoning plan, the City has legally exercised its right to zone the 1½-mile territory.

The defendant does not challenge this assertion. Defendant has never disputed plaintiff's power merely to zone the contiguous territory.

Defendant's position is that the City's power to zone contiguous territory within 1½ miles of its boundary does not extend to the power to require a nonresident of the City to apply for a building permit for construction.

Defendant argues that plaintiff has confused and intermingled the power to zone property and the power to issue a building permit. Defendant points out that the City's brief refers to its "zoning permit requirement."

We note that in the City's zoning ordinance, which was received in evidence, section 15.2 requires building permits and certificates of compliance. Those pertinent sections are as follows:

"15.2.1.1 Building Permit.

15.2.1.1 Building Permit Required. No building or structure shall hereafter be erected or structurally altered until a building permit shall be issued by the City stating that the building or structure and use of land comply with the regulations of this Ordinance and all building and health laws and ordinances of the City.

15.2.1.2 Plat Must Accompany Application. All applications for building permits shall be accompanied by a plat, in duplicate, drawn to scale, showing the actual dimensions of the lot or lots to be built upon, the size of the building or structure to be erected or structurally altered, its location on the lot or lots, and such other information as may be necessary to provide for the enforcement of these regulations. A careful record of such applications and plats shall be kept in the office of the Zoning Administrator.

15.2.2 Certificate of Compliance.

15.2.2.1 Certificate Required. No building or structure hereafter erected or structurally altered shall be occupied and used until a certificate of compliance has been issued by the Zoning Administrator. The certificate of compliance shall be issued only after the Zoning Administrator makes a finding that the building or structure has been erected or structurally altered in conformance with the provisions of this Ordinance and other health and building laws and in accordance with a building permit." City of Galena, Ill., Zoning Ordinance 0—75—1, §15.2 *et seq.* (1990).

In reviewing this ordinance requirement we note that the City requires a building permit and that permit requires compliance with the zoning ordinance and all building and health laws of the City. We also note that there is a provision under section 15.2.2 for a zoning certificate to be issued by the Zoning Administrator. It is our opinion that the grant of authority to restrict zoning is different from the grant of authority to restrict building.

■ Zoning has been defined as "an exercise of the police power that governs where and how land may be used and developed. *** Zoning divides a jurisdiction into a number of zones or land use districts. A zoning ordinance consists of both a text and a map. The text establishes the zoning district and details regulations applicable to each district and land use. The map designates the location and boundaries of each zone created by the text." Connor, *Zoning*, in 1 Illinois Municipal Law, ch. 10, §10.2 (Ill. Inst. for Continuing Legal Educ. 1987).

■ Zoning restrictions are of two categories: (1) the nature of the use which may be made of the property, *i.e.*, residential, industrial or commercial, and (2) restrictions on height, bulk and area. The two are frequently considered together. That is, assuming a particular use such as residential, the question under (2) is what kind of a building can that use be located.

■ The legislative authority for the imposition of building requirements such as are involved here is found in article 11 of the Illinois Municipal Code, granting general powers to the corporate authorities and, in particular, section 11—30—4 of that article, which provides: "The corporate authorities of each municipality may prescribe the strength and manner of constructing all buildings, structures and their accessories and of the construction of fire escapes thereon." Ill. Rev. Stat. 1989, ch. 24, par. 11—30—4.

■ The legislative authority for the enactment of zoning ordinances by municipalities is found in article 11, section 11—13—1, of the Illinois Municipal Code. (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1.) (See *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, 189.) Incidental to the authority to regulate and prescribe the manner of constructing buildings within the corporate limits is the implied authority to require building permits. (*Salem National Bank v. City of Salem* (1964), 47 Ill. App. 2d 279, 284.) These two grants of authority are distinguished in the case of *City of Chicago v. Miller* (1963), 27 Ill. 2d 211, 217-18.

■ The grant of zoning power concerns the height and bulk of buildings; the setback of property from property lines; the limitation

of intensity of use of lot areas and the area of open space; the classification, regulation and restriction of the location of trades and industries and the location of buildings for industry, business and residence uses and the division of the municipality into districts to accomplish the foregoing. The grant also provides for the fixing of standards and prohibiting uses for buildings and certain other nonrelevant matters.

The grant of building power relates solely to prescription of the strength and manner of constructing of buildings, structures and their accessories and of the construction of fire escapes thereon.

The Galena zoning ordinance has two provisions which are the focus of the present dispute: (1) section 4.5, entitled, "Contiguous Unincorporated Land," which extends the ordinance's ambit to the contiguous unincorporated territory not more than 1½ miles beyond the City limits, and (2) section 15.2.1, which states as follows: "Building Permit Required. No building or structure shall hereafter be erected or structurally altered until a building permit shall be issued by the City stating that the building or structure and use of land comply with the regulations of this Ordinance and all building and health laws and ordinances of the City." City of Galena, Ill., Zoning Ordinance 0—75—1, §4.5 (1990).

■ When these provisions are read together, it is clear that the City requires a City building permit for any building or structure within 1½ miles of the City limits. The City has no authority to require a building permit for construction outside its City limit. It could, of course, require a zoning certificate or a zoning permit or something that would certify that the zoning permitted the construction of the type of building sought. However, that is not what the ordinance provides. It provides for a building permit, and a building permit is different from a zoning certificate.

Cities ordinarily have no jurisdiction beyond their corporate limits, and municipal ordinances are confined in their application to the territory of the municipality adopting them. (*Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 243.) But, the legislature may, if it sees fit, confer special extraterritorial powers on municipalities, and when it does so the courts recognize and give effect to them. (9 Ill. 2d at 243.) The exercise of such extraterritorial powers by a municipality is, of course, always subject to the requirement that the ordinance passed pursuant to legislative authority constitutes a valid exercise of the police power and bears a reasonable and substantial relation to the public health, safety or general welfare. (9 Ill. 2d at 244.) The legislature, while providing many extraterritorial powers to the municipality, has not provided that a municipality may require building permits outside

its corporate boundaries. A building permit, which involves something quite different from zoning, and generally requires compliance with building code requirements and requires plans and specifications that relate to those requirements, cannot be required by the City of Galena under the guise of its zoning ordinance.

Therefore, the judgment of the circuit court which found the defendant guilty of violation of the zoning ordinances and imposed a fine of $50 is reversed, and the judgment of the circuit court which found that the ordinance no longer required building permits outside of the municipality is affirmed.

Reversed in part; affirmed in part.

WOODWARD and INGLIS, JJ., concur.