Rainbow Springs Golf Company, Inc.,
Plaintiff-Appellant,†

v.

Town of Mukwonago, Defendant-Respondent.

Court of Appeals

*No. 2004AP1771. Submitted on briefs March 31, 2005.
—Decided June 1, 2005.*

**2005 WI App 163**

(Also reported in 702 N.W.2d 40.)

† Petition to review denied 9-8-05.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Donald J. Murn, Michelle E. Martin, Rebecca J.R. Roeker* of *Murn & Martin, S.C.* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *H. Stanley Riffle* and *Julie A. Aquavia* of *Arenz, Molter, Macy & Riffle, S.C.* of Waukesha.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. Rainbow Springs Golf Company, Inc. appeals an order dismissing its takings claim against the Town of Mukwonago. In May 2003, the Town revoked a conditional use permit and three addenda thereto that permitted various uses of Rainbow Springs' land. Rainbow Springs views the CUP[1] as a vested property right and the deprivation of that right via the Town's revocation as an unconstitutional taking without just compensation. We disagree. A CUP merely represents a species of zoning designations. Because landowners have no property interest in zoning designations applicable to their properties, we hold that a CUP is not property and affirm the circuit court's determination that no taking occurred by virtue of the Town's revocation.

¶ 2. Rainbow Springs owns property in Mukwonago, Wisconsin. The property contains two golf courses, a clubhouse building operated as a snack bar, and the burnt remains of a hotel/conference center. The Town granted a CUP to Rainbow Springs' predecessors on July 1, 1981, allowing them to operate a recreational resort facility, a convention center, and golf courses. On September 2, 1992, they obtained an addendum to that CUP. This addendum allowed them to operate a haunted hotel on the property. A second addendum granted to the previous owners on September 3, 1993, allowed live music and service of beer during the operation of the haunted hotel. On December 2, 1998, Rainbow Springs obtained a third addendum to the CUP, which allowed it to operate a full-service restaurant in the clubhouse.

---

[1] For ease of reference, we refer to the permit and the three accompanying addenda collectively as the CUP.

¶ 3. A fire occurred on April 16, 2002, destroying a substantial part of the property's buildings. In October, the town planner, dissatisfied with Rainbow Springs' lack of compliance with the Town's instructions for restoration of the property, recommended that the town plan commission hold a public hearing to consider termination of the CUP. The following day, acting in her other capacity as senior planner for the Waukesha County Department of Parks and Land Use, she also recommended that the county planning commission revoke the CUP.

¶ 4. The town plan commission accepted the planner's recommendation and commenced a joint hearing with the town board on November 6, which both entities subsequently adjourned and continued on April 30, 2003. The Town voted to terminate the CUP on May 14. The county held a hearing on June 19, 2003. It too decided to terminate the CUP.

¶ 5. Thereafter, Rainbow Springs sought relief in the circuit court in three separate lawsuits. One suit dealt primarily with the propriety of the Town's termination decision in a petition for certiorari review. Rainbow Springs alleged that the Town acted arbitrarily, unreasonably, and oppressively when it revoked the CUP and acted contrary to law. In a second petition for certiorari review, Rainbow Springs made similar allegations with respect to the county's revocation of the CUP. It asserted a takings claim in a third suit, in which it sought compensation for the Town's revocation of the CUP.

¶ 6. In a combined decision filed on May 6, 2004, the circuit court rejected both challenges against the Town. Accordingly, it granted both the Town's request to affirm the revocation and the Town's motion to

dismiss on the takings issue. In separate proceedings, the court affirmed the county's revocation decision.

¶ 7. Rainbow Springs appealed all three cases. We have affirmed both the Town's and the county's termination decisions in separate per curiam opinions on even date. *See Rainbow Springs Golf Company, Inc. v. Town of Mukwonago*, No. 2004AP1769, unpublished slip op. (WI App June 1, 2005) and *Rainbow Springs Golf Company, Inc. v. Waukesha County*, No. 2004AP1770, unpublished slip op. (WI App June 1, 2005). Thus, our decision here addresses only the takings claim.

¶ 8. When the circuit court grants a motion to dismiss for a complaint's failure to state a claim, we review the circuit court's action de novo. *State ex rel. Lawton v. Town of Barton*, 2005 WI App 16, ¶¶ 2, 9, 278 Wis. 2d 388, 692 N.W.2d 304 (Ct. App. 2004). When assessing whether a complaint states a claim, we accept the truth of all alleged facts and all inferences one might reasonably draw from those facts. *Id.* We independently review all legal conclusions. *Id.*, ¶ 9. Whether or not a taking has occurred calls for a legal conclusion. *Zealy v. City of Waukesha*, 201 Wis. 2d 365, 372, 548 N.W.2d 528 (1996).

¶ 9. Article I, section 13 of the Wisconsin Constitution provides, "The property of no person shall be taken for public use without just compensation therefor." Our constitution encompasses more than just physical occupation or possession of property in its conception of "takings" that warrant just compensation. *Howell Plaza, Inc. v. State Highway Comm'n*, 92 Wis. 2d 74, 81, 284 N.W.2d 887 (1979). It also recognizes constructive takings when "regulation goes too far." *Zealy*,

201 Wis. 2d at 373. Such takings, also known as regulatory takings, occur when government regulation deprives a property owner of "all or substantially all practical uses of a property." *Id.* at 373–74.

¶ 10. Rainbow Springs opines that the Town's revocation of its CUP constitutes a regulatory taking. It points out that the CUP permitted various uses of its property. Because the Town revoked the CUP, it has lost 100% of the CUP's value. Thus, Rainbow Springs reasons, the Town has deprived Rainbow Springs of "all or substantially all" use of the CUP.

¶ 11. The Town's decision to revoke the CUP indeed deprived Rainbow Springs of the full value of the CUP, but that fact alone does not suffice to make the revocation a taking. By its terms, article I, section 13 only protects citizens against takings of property. *See* WIS. CONST. art. I, § 13 ("The *property* of no person shall be taken for public use without just compensation therefor." (Emphasis added.)). Our cases have not held otherwise. In order for Rainbow Springs to assert that it had a property interest in the CUP, it must show that it had an entitlement to the CUP as opposed to a mere need, desire, or unilateral expectation of it. *Cf. Kraus v. City of Waukesha Police and Fire Comm'n*, 2003 WI 51, ¶ 54, 261 Wis. 2d 485, 662 N.W.2d 294 (explaining what property interests the Fourteenth Amendment due process clause protects). State law determines whether such a right exists. *Id.*, ¶ 55.

¶ 12. No state law affirmatively reveals that a CUP is or is not a property interest, but we find our supreme court's holding in *Zealy* decisive. *Zealy* held

that a landowner's reliance on a particular zoning designation applicable to his or her property does not suffice to give the landowner a vested right to such designation. *See Zealy*, 201 Wis. 2d at 381. Our courts have acknowledged that CUPs "enjoy acceptance as a valid and successful tool of municipal planning on virtually a universal scale." *See State ex rel. Skelly Oil Co. v. Common Council*, 58 Wis. 2d 695, 700, 207 N.W.2d 585 (1973) (footnote omitted). Rainbow Springs correctly points out that "no court has ever equated a conditional use permit [to] a zoning designation." A closer inspection of the nature of a CUP, however, leads us to conclude that the former is a subspecies of the latter.

■

¶ 13. A zoning designation allows a landowner to use his or her property in certain ways. A residential designation, for example, allows landowners to have houses on their properties, and an agricultural designation allows them to grow crops. Our supreme court in *Skelly* described the nature of conditional uses, the sort of land use a CUP contemplates:

> Conditional uses have been used in zoning ordinances as flexibility devices, which are designed to cope with situations where a particular use, although not inherently inconsistent with the use classification of a particular zone, may well create special problems and hazards if allowed to develop and locate as a matter of right in a particular zone.

*Id.* at 700–01. It went on to state:

> . . . By this device, certain uses (e.g., gasoline service stations, electric substations, hospitals, schools, churches, country clubs, and the like) which may be considered essentially desirable to the community, but

> which should not be authorized generally in a particu-
> lar zone because of considerations such as current and
> anticipated traffic congestion, population density,
> noise, effect on adjoining land values, or other consid-
> erations involving public health, safety, or general
> welfare, may be permitted upon a proposed site depend-
> ing upon the facts and circumstances of the particular
> case.

*Id.* at 701 (citation omitted). The essential difference then between regular zoning classifications and conditional uses is the fact that the zoning authority puts certain conditions on the latter type of uses. A conditional designation is nonetheless a designation.

¶ 14. Rainbow Springs places value on the CUP because the permit allowed Rainbow Springs to engage in designated uses subject to conditions. Among other uses, it permitted Rainbow Springs to run a convention center and hotel, to operate a haunted hotel and to provide live music and beer when the haunted hotel was open, and to operate a full-service restaurant in the clubhouse building. These uses, like "gasoline service stations, electric substations, hospitals, schools, churches, country clubs, and the like" are the type of uses "which may be considered essentially desirable to the community, but which should not be authorized generally in a particular zone because of considerations such as current and anticipated traffic congestion, population density, noise, effect on adjoining land values, or other considerations involving public health, safety, or general welfare." *See id.*

¶ 15. Rainbow Springs contends that because the issue of whether a CUP constitutes property involves an issue of first impression, we ought to look to neighboring jurisdictions for guidance. It points out that other jurisdictions have recognized that once a munici-

527

pality grants a CUP, the landowner has a property interest that runs with the land. We need not follow foreign authority, however, when our own supreme court's holding in *Zealy* is broad enough to encompass conditional uses. We see no reason why conditional zoning designations should be treated differently from designations without conditions attached.

■■■■

¶ 16. Rainbow Springs appears to suggest that its right to a hearing in which the Town demonstrates noncompliance with the permit—at least where non-compliance is the Town's motivation for termination of a CUP—reveals a distinction between general zoning designations and conditional uses. It asserts:

> Holding municipalities to prove non-compliance with a conditional use permit is codified in municipal ordinances, such as the Town Ordinances, which set forth specific termination procedures and standards. This address of termination procedures renders a previously-granted conditional use permit unique, as ordinances [do] not set forth termination procedures and standards for other tools of zoning such as zoning designations and variances.

This language follows Rainbow Springs' suggestion that such a procedure is the minimum required by due process where termination of a property right is sought. Thus, it seems to suggest that town ordinances recognize a due process right and that such recognition reveals a property interest is at stake.

¶ 17. We disagree. Although due process might require such a hearing if a CUP were a property interest, due process considerations and rights to be heard are not limited to situations involving revocation of a property interest. In *Oliveira v. City of Milwaukee*, 2001 WI 27, ¶¶ 3, 24, 27, 31, 242 Wis. 2d 1, 624 N.W.2d

117, the supreme court addressed whether members of the *public* had been adequately apprised of changes to a zoning amendment:

> The rationale for requiring a Wis. Stat. § 62.23(7)(d)2. notice and hearing when there is a substantial change in the substance of the zoning amendment ensures that the *public* has the opportunity to express views regarding the zoning amendments. The statutory notice and hearing requirements implicate due process concerns because property rights are *affected* by changes in the zoning laws. "Notice and hearing provisions are invariably intertwined with due process considerations. The legislature, in enacting sec. 62.23(7)(d), has attempted to protect this *right to due process* by requiring an adequate notice and hearing before a change in municipal zoning could affect the character of a neighborhood."

*Id.*, ¶ 31 (emphases added; footnote omitted). Rainbow Springs' right to be heard prior to revocation of the CUP stemmed from the fact that revocation constituted a change in the conditional zoning designation which *affected* property Rainbow Springs owned (its land), not because the CUP itself was property.

¶ 18. We affirm. Rainbow Springs' complaint does not state a claim for relief because it does not demonstrate that revoking the CUP deprived Rainbow Springs of a *property interest*. A CUP is merely a type of zoning designation, not a piece of property.

*By the Court.*—Order affirmed.