SIXTH DIVISION
March 24, 2006

No. 1-05-2001

| | | |
|---|---|---|
| THE COUNTY OF COOK, a Body Politic Corporate, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04 M1 402258 |
| ALLAN MONAT and BECKY MONAT, | ) ) | Honorable David B. Atkins, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

The plaintiff County of Cook, a body politic corporate (the County), filed a complaint against defendants Allan Monat and Becky Monat for violating zoning ordinances by keeping two horses on their property in unincorporated Cook County and sought an injunction to prohibit defendants from keeping the horses on that property. In response, defendants raised an affirmative defense of a special use, which was granted to the previous owner of the property and which allowed him to continue boarding his horses. The circuit court granted summary judgment in the County's favor, enjoined defendants from boarding horses on their property and imposed a fine on defendants for the violations. On appeal, defendants contend that the special use runs with the land. We disagree and affirm the judgment in favor of the County.

The instant action marks defendants' second litigation in their ongoing attempt to keep horses on property in the Timberlane Estates subdivision in unincorporated Cook

County. The County and Allan Monat were previously before this court in Monat's

ultimately unsuccessful attempt to build a stable and board horses at another property

in that subdivision, 4110 Timberlane. See Monat v. County of Cook, 322 Ill. App. 3d

499, 750 N.E.2d 260 (2001) (hereinafter, Monat I). In that action, this court found that

the ordinance did not permit expansion of the special use to all the lots in Timberlane

Estates. Monat I, 322 Ill. App. 3d at 509.

The property at issue in this action, the subject property, is located at 4190

Timberlane Drive. Defendants have lived at the subject property since April 2001. The

size of defendants' lot is approximately one-half acre and the lot, like all the others in

Timberlane Estates, is zoned "R-4," or, single-family residential. Defendants purchased

the property at 4190 Timberlane Drive from Ronald Krueger, who had kept horses there

and was granted a special use permit in 1978 to continue doing so. In 1978, Krueger

and one other homeowner, Frank Williams, were sued for violating the zoning ordinance

by having stables on lots smaller than three acres. The Department of Building and

Zoning of Cook County (DBZ) then applied for a special use, which, according to one of

the zoning board members, was for "the private boarding of horses that are presently

existing" in the area. Following a hearing, the special use was granted.

Although defendants lived in the subdivision since the end of 1997, first, for more

than three years at the 4110 property, then at the subject property, they admitted that

they never observed horses on the subject property when it was owned by Krueger.

Defendants also admitted that they never observed horses being boarded there. Since

purchasing the subject property, however, defendants have kept horses there.

In November 2003, the DBZ sent defendants a letter informing them that an inspection of their property revealed violations of certain provisions of the County's building and the zoning ordinances. Specifically, defendants were notified that there was one violation of the former, for having a stable that was built without the required permit (see Cook County Building Ordinance § 5.3-1(a)(1) (1997)), and two violations of the latter, for keeping horses on a lot that was smaller than three acres and not zoned for keeping horses (see Cook County Zoning Ordinance §§ 4.4.8.A.1.e, 4.4.6 (2001)). Shortly thereafter, defendants were informed that the citation for the building ordinance was rescinded because a prior owner had constructed the stable structure more than 20 years ago. The stable structure is not at issue in this controversy.

Rather, the controversy involves only the keeping of horses on the subject property. In the same January 2004 letter rescinding the building ordinance violation, the County's commissioner of building and zoning advised defendants that litigation for the zoning violations would not be pursued at the time, based on defendants' compliance with the ordinance by removing the horses from the property. However, defendants were informed that if they wanted to board "any" horses on their property in the future, they would have to apply for a special use with the DBZ. The letter also informed defendants that "an Accessory Use for private stables (boarding horses) requires a zoning lot a minimum of three (3) acres in size" and that they were "not permitted to board any horses as an Accessory Use on your property without first obtaining such a Special Use." The letter encouraged defendants to apply for the special use and described the procedure for doing so, which includes a public hearing.

Defendants were specifically notified that if they returned a horse to the property without having obtained a special use, the DBZ would "issue a violation for non-compliance with the Zoning Ordinance" and seek an injunction to prohibit the boarding of horses on the property and fines for the ordinance violation.

In July 2004, after an inspection revealed that defendants had horses on the subject property, the County filed its verified complaint for keeping horses on a lot of approximately one-half acre in size in violation of the zoning ordinance. Defendants admitted keeping two horses on the property, but raised the 1978 special use as an affirmative defense. The County denied the affirmative defense and subsequently moved for summary judgment. In its supporting memorandum, the County referred to a similar circuit court case, which was one of three consolidated cases concerning properties in the Timberlane Estates subdivision (County of Cook v. Zorn, No. 99 M1 402044 (Cir. Ct. Cook Co.), County of Cook v. Peterson, No. 99 M1 402045 (Cir. Ct. Cook Co.), County of Cook v. Amelio, No. 00 M1 400077 (Cir. Ct. Cook Co.)) (hereinafter Amelio), although it recognized that the decision in that case was not binding. There, the purchaser of the Williams lot, Arthur Amelio, also raised the 1978 special use as an affirmative defense but the court held that the special use granted expired with the sale of the Williams property.

On May 17, 2005, the court issued a written memorandum order and opinion in which it found that there had been no zoning change and that the Timberlane Estates subdivision was zoned R-4, for single-family residential use. The court further found that the property at issue was a one-half acre lot, defendants were boarding two horses

on the lot, and defendants had not been granted a special use permit to do so. The court considered the affirmative defense at length, but found as a matter of law that the special use granted in 1978 (to Krueger) expired with the change in ownership of the property.[1] Finding that the special use did not run with the land, *i.e.*, that it expired when Krueger sold the property to defendants, the court thus concluded the 1978 special use did not sustain defendants' affirmative defense and that the County was entitled to summary judgment. On that basis, the court granted the injunction, enjoining defendants from boarding horses on their property and directing them to remove the horses before a certain date, and enjoining defendants from using the structures on their property for boarding horses. This appeal followed.

The sole issue presented on appeal is whether the 1978 special use runs with the land or terminates with the sale of the property. Defendants raise several points in support of their contention that the special use runs with the land, basing their position

---

[1] In its discussion of the special use permit, the court relied upon, among other things, the reasoning in Amelio and the finding in Monat I that the special use could not be expanded to other lots because it was intended to remedy a specific problem at a specific time (Monat I, 322 Ill. App. 3d at 513).

primarily on the official zoning maps that contain the special use designation. The County maintains that the 1978 special use permit at issue was personal to the previous owner of the property, Krueger, and, like special uses generally, it does not run with the land. We agree that the special use at issue here does not run with the land.

Summary judgment should be granted where the pleadings, depositions, affidavits, admissions, and exhibits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004); Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 315, 821 N.E.2d 269 (2004); Lapp v. Village of Winnetka, 359 Ill. App. 3d 152, 160, 833 N.E.2d 983 (2005). The grant of summary judgment is reviewed *de novo*. Home Insurance Co., 213 Ill. 2d at 315; Lapp, 359 Ill. App. 3d at 160. A grant of summary judgment may be affirmed on any basis appearing in the record, even if the lower court did not rely upon that ground. Home Insurance Co., 213 Ill. 2d at 315.

Initially, we note that, because defendants are challenging the application of the zoning ordinance or, alternately, seeking application to them of the special use, they bear the burden of proof in this matter. See Cosmopolitan National Bank v. County of Cook, 103 Ill. 2d 302, 310-11, 469 N.E.2d 183 (1984); South Side Move of God Church v. Zoning Board of Appeals of the City of Chicago, 47 Ill. App. 3d 723, 727, 365 N.E.2d 118 (1977). Thus, it is for defendants to show by clear and convincing evidence that the application of the three-acre lot requirement under the zoning ordinance for a stable is unreasonable and arbitrary and bears no substantial relation to public health, safety,

morals, or welfare. See Cosmopolitan National Bank, 103 Ill. 2d at 310; Cornell v. County of Du Page, 58 Ill. App. 3d 230, 236, 374 N.E.2d 1 (1977). Alternately, defendants would have to satisfy a similar burden in seeking application of the special use to them. See Cosmopolitan National Bank, 103 Ill. 2d at 311.

It is undisputed that the County is authorized to enact zoning ordinances pursuant to its police power (see City of Galena v. Dunn, 222 Ill. App. 3d 112, 120-21, 583 N.E.2d 616 (1991)) and that the Cook County Zoning Ordinance (ordinance) governs the zoning of the property at issue here (see Cook County Zoning Ordinance (2001)). It is equally undisputed that, under the ordinance, the Timberlane Estates subdivision is zoned for single-family residential use. See Cook County Zoning Ordinance § 4.4.1 (2001) (describing "R-4" single-family residential district); Monat I, 322 Ill. App. 3d at 502.

Section 4.4.8 of the ordinance provides that "uses in the R-4 Single-Family Residence District" must conform to certain requirements. Cook County Zoning Ordinance § 4.4.8 (2001). Specifically, a minimum lot size of "not less than twenty thousand (20,000) square feet is required for each permitted or special use." Cook County Zoning Ordinance § 4.4.8.A.1 (2001). However, private stables require a minimum lot size of three acres. Cook County Zoning Ordinance § 4.4.8.A.1(e) (2001). Additionally, where the lot is not the requisite size, the property owner may seek the issuance of a special use permit to allow stables in an R-4 district. See Cook County Zoning Ordinance § 4.4.4.C.4 (2001).

There is no dispute that defendants' lot is smaller than the three acres required

by the ordinance for a private stable. It is likewise undisputed that the only procedure for allowing the stable on defendants' property is by the issuance of a special use permit. Defendants acknowledge that the County has the authority to impose limitations or conditions upon the grant of a special use. However, defendants assert that the County did not do so here.

As set out in Monat I, in 1978, the "immediate problem" that led to the grant of the special use was "the suit against two homeowners [*i.e.*, Krueger and Williams] charging them with violating the zoning ordinance." Monat I, 322 Ill. App. 3d at 508. The Zoning Board of Appeals (ZBA) sought the special use to "remedy the problem" facing Krueger and Williams by allowing them ("and any others similarly situated") to continue keeping their horses on their properties. Monat I, 322 Ill. App. 3d at 508. Thus, in May 1978, the ZBA filed an application for a "Unique Use (Special Use)" of the property at issue "for the private boarding of horses (presently existing)."

In August 1978, the ZBA issued its findings and recommendations to the Cook County board of commissioners. Among those were the following:

> "Proposal: For the private boarding of horses (existing
>
> conditions) in the R-4 Single Family Residence District.
>
> Recommendations: That the application's Unique Use
>
> (Special Use) as stated in these findings be granted.
>
> This docket was brought on the motion by the Zoning
>
> Board of Appeals solely for the continued use for the private
>
> boarding of horses."

The findings further stated that, at public hearing in June 1978, a director of the homeowner's association for the subdivision appeared before the ZBA "in support of this unique use, which has been operating for many years." It concluded with the recommendation to the board of commissioners that "the Unique Use (Special Use) in the R-4 Single Family Residence District which has been in conformity for ma[n]y years be granted."

After reviewing the ZBA's findings and recommendations, the board of commissioner's committee on public service concurred that the special use be granted. Monat I, 322 Ill. App. 3d at 503. The board of commissioners adopted the committee's report and granted the special use "by ordinance dated September 5, 1978." Monat I, 322 Ill. App. 3d at 503.

Defendants' central claim that the special use permit runs with the land is based upon a designation in a recent zoning map for Northfield Township which differs from a map attached to the ZBA's findings and recommendations.[2] The Northfield Township map, published in 1996, contains the designation "R-4 SU," *i.e.*, single-family residential special use, for the entire Timberlane Estates subdivision. Defendants maintain that

---

[2] The copy of the map attached to the ZBA's findings and recommendations which appears in the record does not contain the full text of a notation made with reference to the entire R-4 district comprising the Timberlane Estates subdivision. Defendants assert, in their reply brief, that the notation reads "UNIQUE USES FOR SCATTERED PRIVATE STABLES PRESENTLY EXISTING IN THIS AREA."

this designation amounts to what is effectively an amendment of the zoning map. They argue that the 1996 map designation, with the absence of language specifically limiting the special use to the then-owners, establishes that the special use runs with the land and assert that the special use is not a permit ("Had the County intended the Special Use to be permit *** it would not have amended the zoning maps"). Yet, that is exactly what it is.

First and foremost, we note that a "special use" is a permit. The Cook County Zoning Ordinance provides that a special use may be allowed "subject to the issuance of a special use *permit*." Emphais added. Cook County Zoning Ordinance § 4.4.4 (2001); see also 9 Real Property Service Illinois ch. 46, §46:33 (1993) ("A special use is granted *** by means of a special use permit").[3] A special use permit is one of three mechanisms, with variances and zoning amendments, typically provided in zoning ordinances "to accommodate circumstances for which the generalized ordinance regulatory scheme is imperfect." Jones v. City of Carbondale, 217 Ill. App. 3d 85, 89, 576 N.E.2d 909 (1991), citing S. Connor, Zoning, in Illinois Municipal Law ch. 10, §10.16 (Ill. Inst. for Cont. Legal Educ. 1978). See generally 101A C.J.S. Zoning and Land Planning §252 (2005) (discussing special or conditional use permits, which are both distinguishable from a variance).

Our supreme court has stated that "a 'special use' is a type of property use that is

---

[3] A permit is defined as, generally, "any document which grants a person the right to do something." Black's Law Dictionary 1140 (6th ed. 1990).

expressly permitted within a zoning district by the controlling zoning ordinance so long as the use meets certain criteria or conditions." City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc., 196 Ill. 2d 1, 16, 749 N.E.2d 916 (2001). This and other districts of the appellate court have also made clear that a special use is "a *permission* by the Board to an owner to use his property in a manner contrary to the ordinance provided that the intended use is one of those specifically listed in the ordinance and provided that the public convenience will be served by the use." Emphasis added. Jones, 217 Ill. App. 3d at 90; Rosenfeld v. Zoning Board of Appeals of City of Chicago, 19 Ill. App. 2d 447, 450, 154 N.E.2d 323 (1958). A special use, like a conditional use, provides for infrequent uses that are beneficial but potentially inconsistent with normal uses. Pioneer Trust & Savings Bank v. County of McHenry, 41 Ill. 2d 77, 84, 241 N.E.2d 454 (1968); see also S. Connor, Zoning, in Illinois Municipal Law ch. 13, §13.17 (Ill. Inst. for Cont. Legal Educ. 2000).

While a special use, like a variance, deviates from the principal permitted uses of a zoning ordinance, it differs in scope and purpose. Jones, 217 Ill. App. 3d at 89. In contrast to a variance, which is authority extended to a property owner to use his property in a manner forbidden by the zoning enactment and which is usually based on a showing of hardship, a special use allows use of property that is expressly permitted by the zoning enactment. Chicago Heights, 196 Ill. 2d at 17; Hawthorne v. Village of Olympia Fields, 204 Ill. 2d 243, 253 n.2, 790 N.E.2d 832 (2003) (same). See also 9 Real Property Service Illinois ch. 46, §46:101 (1993) ("In contrast to variations, special use permits are granted only for uses listed in the ordinance"). Consistent with this

distinction, a special use is not subject to the same procedural requirements as a variance. Jones, 217 Ill. App. 3d at 89; see also Kotrich v. County of Du Page, 19 Ill. 2d 181, 188, 166 N.E.2d 601 (1960).

Further, a special use also differs from a zoning amendment, which changes or alters the original ordinance or some of its provisions. Jones, 217 Ill. App. 3d at 89. See also 9 Real Property Service Illinois ch. 46, §46:35 (1993). Although a special use authorizes use of property contrary to the ordinance, it is not the equivalent of a zoning amendment. Jones, 217 Ill. App. 3d at 89; see also Consumers Illinois Water Co. v. County of Will, 220 Ill. App. 3d 93, 96, 580 N.E.2d 927 (1991) (rejecting argument that a special use permit is tantamount to a change in the zoning map); accord 3 A. Rathkopf & D. Rathkopf, Law of Zoning and Planning ch. 61, §61:12 (2005) (special use is not a zoning change). Rather, by its very nature, a special use originates in the ordinance, in contrast to an amendment of the ordinance. Jones, 217 Ill. App. 3d at 91; see Consumers Illinois Water Co., 220 Ill. App. 3d at 96 (special use may be created in existing zoning district without changing underlying zoning classification or zoning map). This is so because a special use "authorizes a use of the land pursuant to the existing zoning ordinance." Jones, 217 Ill. App. 3d at 91. See also Chicago Heights, 196 Ill. 2d at 17 (inclusion of a special use within a zoning ordinance is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan).

Moreover, a special use permit may be issued for certain periods of time and under certain circumstances which allow the county authorities the opportunity to maintain a certain degree of control of the special use. Consumers Illinois Water Co.,

220 Ill. App. 3d at 96. See also Rockford Blacktop Construction Co. v. County of Boone, 263 Ill. App. 3d 274, 282, 635 N.E.2d 1077 (1994) (five-year restriction on special use permit reasonable).

The parties submit that no Illinois case has addressed the specific question raised here of whether a special use permit runs with the land and we have not found any case directly on point.

Defendants, however, also fail to provide any legal authority to support their claim that the special use designation on the County's 1996 zoning map amounts to an amendment of the zoning map. Thus, we could consider that point waived. See Bank of Waukegan v. Village of Vernon Hills, 254 Ill. App. 3d 24, 33, 626 N.E.2d 245 (1993) (citing Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7) (points not supported by citation to any authority are waived)).

Rather, we consider the contention, but note that similar arguments have previously been rejected. To the contrary, our courts have held that a special use permit does not change the zoning map, nor does a map designation of a permitted special use amend the zoning ordinance.

In Consumers Illinois Water Co., the court rejected the argument that the granting of a special use permit was tantamount to a change in the zoning map. Consumers Illinois Water Co., 220 Ill. App. 3d at 96. This determination was based on the recognition that a special use is one which may be created in an existing zoning district without changing the underlying zoning classification or the zoning map. Consumers Illinois Water Co., 220 Ill. App. 3d at 96.

In Jones, an argument was made that permitted special uses, which were shown on the official city zoning map, were amendments to the existing zoning ordinances. Jones, 217 Ill. App. 3d at 92. There, the court determined that when the special use was granted, the underlying zoning classification for the area remained the same. Jones, 217 Ill. App. 3d at 92. The special use was "merely a designated use within the zoned district which is indicated on the official zoning map." Jones, 217 Ill. App. 3d at 92. The designation of the special use on the map was simply a means of giving notice that a special use was being made of a certain parcel of land: the map designation was, in essence, a convenience to the public. Jones, 217 Ill. App. 3d at 92.

Here, too, the special use granted in 1978 did not disturb the underlying residential zoning classification of the Timberlane Estates subdivision. See Consumers Illinois Water Co., 220 Ill. App. 3d at 96. Nor did notation of the special use on the 1996 zoning map, showing "R-4 SU" for the entire subdivision, amend the zoning classification. See Consumers Illinois Water Co., 220 Ill. App. 3d at 96; Jones, 217 Ill. App. 3d at 92. Rather, the underlying zoning classification remains single-family residential and the notation of the special use designation was merely a notice, or a convenience, to the public. See Jones, 217 Ill. App. 3d at 92.

Further, as noted, Illinois law provides that the scope of the special use permit may be limited in duration and circumstances, allowing the zoning authorities to maintain a certain degree of control of the special use. See Rockford Blacktop Construction Co., 263 Ill. App. 3d at 282; Consumers Illinois Water Co., 220 Ill. App. 3d at 96. Defendants contend that the special use here was not limited because the ZBA

did not mention the names of the two owners of the properties--Krueger and Williams-- for which the permit was granted. However, defendants do not provide any legal authority for their contention that the special use permit must specify that the use is limited to a certain owner. Rather, defendants assert, the limiting phrases included in the special use application ("presently existing" and "existing conditions") should be understood merely as referring to the private boarding of horses instead of the specific owners or specific horses "presently existing" when the special use permit was granted. We reject this interpretation.

As earlier noted, this court previously held the special use limited in that it did not permit the expansion of that use to other lots in the subdivision, but only permitted the continued housing of horses on lots with stables at the time of the enactment of the special use. Monat I, 322 Ill. App. 3d at 509. The grant of the special use itself was previously found to be unambiguous (Monat I, 322 Ill. App. 3d at 506-07); it was only the scope of the use permitted that was unclear (Monat I, 322 Ill. App. 3d at 507). Because the issue concerned another property in the subdivision, namely, 4110 Timberlane, the court was not presented with and accordingly did not reach the issue of subsequent owners of the Krueger and Williams properties, or even subsequent horses owned by Krueger or Williams. As noted at oral argument in this case, the court previously did not determine whether either of the those owners would have been allowed to keep a different horse, had one of the horses that he owned when the special use permit was issued later died. Therefore, open questions remained pertaining to the scope of the special use allowed to the then-owners, Krueger and Williams.

In previously considering the scope of the special use, the court looked beyond the statutory language itself and examined the legislative intent as demonstrated by the hearing testimony and documents presented to the ZBA. Monat I, 322 Ill. App. 3d at 507-08. Defendants now object, in their reply brief, to any consideration of the hearing testimony on the basis that there is no showing here that the statements made to the ZBA were considered by the county board. We do not have before us the record presented in Monat I, wherein the hearing testimony and documents were considered, but we note that defendants did not appeal that decision; thus, if there were any objections to purported improper consideration of certain statements, those objections were not raised. See Thompson v. Cook County Zoning Board of Appeals, 96 Ill. App. 3d 561, 575, 421 N.E.2d 285 (1981) (admission of report of proceedings before ZBA properly considered where objecting party had previously sought its admission without restriction). Further, defendants rely upon the ZBA's findings and recommendations for their map argument and other points, and they refer to Monat I without suggesting restriction upon its consideration. Here, the language used in the application and the ZBA's findings and recommendations provides sufficient basis for our rejection of defendants' interpretation.

We consider again the special use application and ZBA's findings and recommendations, and find that defendants' reading of those would render the limitations in both superfluous. The intent of the ZBA was expressed in the language it used in applying for the special use and in setting forth its findings and recommendations. If the ZBA had intended to seek a special use merely for the general

private boarding of horses, rather than for the specific boarding of horses by the two,

specific owners, there would have been no need to include the parenthetical phrases

"(presently existing)" in its application or "(existing conditions)" in its findings and

recommendations.

Were we to adopt defendants' interpretation of the application, the phrase

"presently existing" would amount to nothing more than a repetition of the already-

stated purpose of the application: under defendants' reading, it would mean, in essence,

that the ZBA sought a special use for the private boarding of horses (private boarding).

Rather, we believe, the phrase had the meaning of limitation, albeit without naming

Krueger or Williams (or their horses), to restrict the special use sought for the private

boarding of horses to those that were then "(presently existing)." Similarly, the

parenthetical phrase "(existing conditions)" used in the ZBA's statement of the special

use proposal in its findings would be repetitious if it were understood as defendants

urge. In essence, it would mean that the ZBA's proposal was for "the private boarding

of horses (private boarding)," rather than the private boarding of horses that constituted

the then-"(existing condition)." It would not be reasonable to interpret language in either

the application or the findings in a manner that would render a phrase to be merely

repetitious and a nullity. See, *e.g.*, Eads v. Heritage Enterprises, Inc., 204 Ill. 2d 92,

105, 787 N.E.2d 771 (2003) (under basic rule of statutory construction, no part is

rendered a nullity). Thus, we conclude from the application and the findings and

recommendations made by the ZBA that the special use was limited in scope to the

then-owners of the two properties.

1-05-2001

Any consideration of statements made at the hearing, as set out in Monat I, would only bolster this conclusion and further refute the expansive reading of the special use application and documents that defendants urge.  As this court has previously noted, the special use was sought to remedy a specific problem, that of two homeowners who had been cited for zoning ordinance violations.  Monat I, 322 Ill. App. 3d at 508.  Although it was acknowledged at the hearing that "a large number of people" in the subdivision owned horses, the testimony addressed only the two specific properties and owners (Krueger and Williams) who had been cited, and "[n]o witness or board member spoke of expanding the usage."  Monat I, 322 Ill. App. 3d at 508.

For example, a representative of the homeowner's association testified on behalf of the association, but his testimony did not refer to horse owners in the subdivision generally.  Rather, he testified about the two owners in question, stating that " 'we think it would be wrong for them to be denied this use, *** [the fact that they have been there] and the horses have always been there.' "  Monat I, 322 Ill. App. 3d at 508.  Williams then spoke on his own behalf and for Krueger, and he presented letters from neighbors supporting the two of them.  See Monat I, 322 Ill. App. 3d at 508.  As the record reveals, one such letter stated, "It's been brought to our attention that Mr. Williams and Mr. Krueger have been petitioned into court regarding a controversy over the possession of horses on their respective properties."  Thus, from the facts presented previously to this court as well as the record before us, we find it clear that the grant of the special use was specific and personal to Williams and Krueger.  Defendants' assertions concerning the absence of the owners' names in the special use application do not persuade us

˘18˘

otherwise. Further, defendants have relied primarily on their own assertions and, as elsewhere, they have failed to present any pertinent legal authority on this point. Such claims on defendants' part do not amount to the clear and convincing evidence necessary to sustain their burden of proof in this challenge.

We also acknowledge that it has been found that a procedure for reapplication of the special use cannot be implied where it does not specifically appear in the ordinance (see Central Transport, Inc. v. Village of Hillside, 210 Ill. App. 3d 499, 521, 568 N.E.2d 1359 (1991)), but such holding does not disturb our conclusion in the instant case that the special use here was personal and did not run with the land. At issue in that case was the application procedure for a special use; there, the municipal authorities had rejected the plaintiff's proposal for construction of additional trucking terminal facilities, but had previously allowed expansion of the permitted use multiple times without requiring reapplication by the previous owner. Because the village had previously interpreted its own ordinance as not requiring from the previous owner a special use application for expansion of its facility, it could not require the plaintiff to submit a new application for the same special use. See Central Transport, Inc., 210 Ill. App. 3d at 521. In the instant case, in contrast, the original application contained an explicit limitation, that of "existing conditions," *i.e.*, the "presently [then-]existing" boarding of horses. The boarding of horses that existed then meant the boarding of horses of two property owners, Krueger and Williams. The inclusion of the phrases "existing conditions" and "presently existing" is reasonably viewed, we believe, as an intentional limitation on the special use permit, giving only those owners the right to continue

boarding their then-existing horses.

Finally, we note that the County acknowledged there is a split in out-of-state authorities on the question of whether a special use runs with the land. A brief and noncomprehensive examination of such authorities shows that various courts have reached divergent results. For example, an appellate court in Wisconsin recently held that a conditional use permit, which is similar to a special use permit, does not implicate a vested property right and was not property in the context of a takings claim. Rainbow Springs Golf Co. v. Town of Mukwonago, 284 Wis. App. 2d 519, __, 702 N.W.2d 40, 41 (2005). The court rejected the claim that such permit runs with the land. Mukwonago, 284 Wis. App. 2d at __, 702 N.W.2d at 44. In recent years, the Supreme Court of Virginia has also held that a conditional use permit does not run with the land (Shoosmith Bros., Inc. v. County of Chesterfield, 268 Va. 241, __, 601 S.E.2d 641, 643 (2004)); likewise, a Missouri appellate court ruled, without discussion, that a special use permit which did not contain limits or restrictions on transferability does not run with the land (City of Sugar Creek v. Reese, 106 S.W.3d 615, 616 (Mo. 2003)).

On the other hand, in the context of environmental regulations, a Connecticut appellate court held that a permit "to conduct a regulated activity runs with the land" (Fromer v. Two Hundred Post Associates, 32 Conn. App. 799, 802, 631 A.2d 347, 349 (1993)) and the California Supreme Court held that a conditional use permit runs with the land (County of Imperial v. McDougal, 19 Cal. 3d 505, 510, 564 P.2d 14, 17, 138 Cal. Rptr. 472, 475 (1977), citing Cohn v. County Board of Supervisors, 135 Cal. App. 2d 180, 184, 286 P.2d 836, 839 (1955), which apparently based its holding that special

use permits run with land on variance law).  In earlier cases, Massachusetts courts determined that a grant for use of property for boat rentals, sales and service was a permit for personal use rather than a variance (Todd v. Board of Appeals of Yarmouth, 337 Mass. 162, 169, 148 N.E.2d 380, 384-85 (1958)) and held that a building permit was a grant of personal privilege (Simon v. Meyer, 261 Mass. 178, 183, 158 N.E. 537, 538 (1927)), but held that a permit to build a garage was both an unassignable personal privilege and a grant which attached to the land when exercised and passed as an incident upon a conveyance of the land, but which did not attach to or become an incident of the land where no garage had been built prior to the conveyance (Hanley v. Cook, 245 Mass. 563, 139 N.E. 654 (1923)).

Defendants have objected to the County's and the lower court's reference to secondary authority that refutes their position and establishes that a special use permit does not run with the land.  See 9 Real Property Service Illinois ch. 46, §46:101 (1993) ("A special use permit expires with a change in ownership").  However, defendants, again, have failed to cite any of the foreign state cases, or other secondary or persuasive authorities, for support of their position.  We reiterate that it is defendants who bear the burden in their attempt to have the special use apply to them.  See Cosmopolitan National Bank, 103 Ill. 2d at 310-11.  Defendants have failed to sustain that burden.  Thus, without deciding generally whether special uses run with the land, we hold that the 1978 special use was limited to the then-owners and their then-existing horses.  Consistent with our earlier determination rejecting an expansive application of the special use to other properties in the subdivision (see Monat I, 322 Ill. App. 3d at

509), we further conclude that the special use does not apply to defendants as subsequent owners of one of the two properties. Rather, we believe, the special use permit at issue here expired with Krueger's sale of the property.

While the dissent would remand this case for further proceedings before the circuit court, any further proceedings would turn on an interpretation of the special use permit granted in 1978. We fail to see what other fact-finding could occur or how further proceedings could establish with any greater certainty what was meant by the ZBA's choice of language in 1978. If, however, the dissent means to suggest that proceedings could establish whether defendants might meet the conditions for a special use permit, we note that defendants had the opportunity but chose not to avail themselves of the procedure to apply for a special use permit at the appropriate time.

Because defendants' property is less than three acres in size, defendants are not allowed to board horses on their property. The court properly found that defendants' boarding of horses was in violation of the County's zoning ordinance and properly enjoined them from so doing and imposed fines for the violation. Based on this determination, we do not address defendants' arguments concerning zoning provisions for accessory uses or their claims that conditions in the subdivision had not changed. For the above-stated reasons, the circuit court properly granted summary judgment in the County's favor.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

McNULTY, P.J., concurs.

1-05-2001

JUSTICE TULLY, dissenting:

I respectfully dissent.

We are called upon to review the trial court's grant of summary judgment in favor of the County.  As the majority points out, summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2004); Progressive Universal Ins. Co. v. Liberty Mut. Fire Ins. Co., 215 Ill. 2d 121, 127 (2005).  The circuit court's grant of summary judgment is reviewed de novo.  Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 315 (2004).  Faced with this record, I believe that a genuine issue of material fact exists such that the circuit court's grant of summary judgment in favor of the County was improper.

The majority recognizes that special use permits may be issued for certain periods of time and under certain circumstances.  Consumer Illinois Water Co. v. County of Will, 220 Ill. App. 3d 93, 96 (1991).  The ability to limit the scope of a special use permit allows the county authorities the opportunity to maintain a certain degree of control of the special use.  Consumer Illinois Water Co., 220 Ill. App. 3d at 96.  The special use application in this case, which was initially issued in 1978, contains the limiting phrase "presently existing."  In addition, the ZBA's findings and recommendations state the special use is limited to "existing conditions."  The County asserts, and the majority agrees, that the phrases "presently existing" and "existing

conditions" were meant to restrict the special use sought for the private boarding of horses to those that were then "presently existing" under the "existing conditions" such that the special use permit was meant to expire once the property was transferred to a new owner.

Defendants, on the other hand, assert that the phrases "presently existing" and "existing conditions" were not meant to limit the special use to the then living owners or to the then living horses. In support of their assertion that the special use permit was not limited to the particular owner or the particular horses, defendants point out that neither the special use application nor the ZBA findings and recommendations mention the names of the particular owners or otherwise suggest that the special use was limited to the current owners. Furthermore, defendants contend that the phrases "presently existing" and "existing conditions" refer generally to the private boarding of horses on that property because the boarding of horses was the presently existing condition at the time the special use permit was granted. I believe that the dispute regarding the intended meaning of the limiting phrases, both in the special use permit application and in the ZBA's findings and recommendations, gives rise to a genuine issue of material fact such that summary judgment is inappropriate. See Progressive Universal Ins, 215 Ill. 2d at 127.

*Accordingly, rather than accepting the County's interpretation of these limiting phrases, I would reverse the summary judgment and remand this matter for further proceedings.*